UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

HSBC Finance Corporation
and HSBC Card Services, Inc.

      Plaintiffs,

      v.

Peter C. Constant,

      Defendant.

Civil No. 06-1529 (JMR/FLN)

**REPORT AND RECOMMENDATION**

---

Daniel Oberdorfer and Tracey Donesky for Plaintiffs.
V. John Ella for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on August 4, 2006, on Plaintiffs' Motion to dismiss Defendant's counterclaims [#11]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Plaintiff's Motion be granted in part and denied in part.

## I. FINDINGS OF FACT

Defendant Peter Constant (hereinafter "Constant") was hired by Metris Companies, Inc. (hereinafter "Metris") on or about October 5, 1998, as a Vice President in Acquisitions. (Compl. ¶ 9.) Metris Companies was a financial services business that provided general purpose payment and credit cards throughout the United States. (Compl. ¶ 7.) Throughout his employment with Metris Constant was promoted and eventually he became the Senior Vice President of Direct Marketing of the Credit Card Marketing division for Metris in September 2000. (Compl. ¶ 9.) Constant held this position with Metris until his termination in December, 2005. (Compl. ¶ 9.)

### A.     The SERP Plan

In September 2002 Constant was selected to participate in Metris' Supplemental Executive Retirement Plan (hereinafter "SERP Plan"). (See Affidavit of Tracey Donesky (hereinafter "Donesky Aff.) Ex. A.)  The SERP Plan is an unfunded, nonqualified executive compensation plan which is commonly referred to as a "top hat" plan.  The SERP Plan was last amended in February 2005.  The SERP Plan provides that

> [I]n the event of a Change in Control . . . while a Participant is employed by one or more Employers and the Participant has not yet attained age 55, the Participant's Account shall be increased by an amount equal to the present value of the current Participant's Account projected to age 55 using the contribution and earnings assumptions most recently applied by the Participant's Employer in determining the Annual Company Contribution Amount for the Plan Year immediately preceding the Change in Control, less the sum of the Participant's Account at the date of the Change in Control and the amount of any prior distributions from such account.  The Participant's Account or adjusted account . . . shall immediately become 100% vested and notwithstanding Section 5.2, shall be payable in the form and at the date specified pursuant to Section 5.2.

(Donesky Aff. Ex. A Section 3.3(d).)  Section 5.2 states that "[a] Participant shall receive the Retirement Benefit pursuant to an Annual Installment Method of 15 years.  Installment payments shall commence no later than 60 days after the last day of the Plan Year in which the Participant Retires."  (Donesky Aff. Ex. A Section 5.2.)  The SERP Plan defines the term "retires" in Section 1.27 to mean "with respect to an Employee, severance from employment from all Employers for any reason other than a leave of absence, death or Disability on or after the earlier of the attainment of (a) age sixty-five (65) or (b) age fifty-five (55) with five (5) Years of Plan Participation." (Donesky Aff. Ex. A Section 1.27.)

> Section 15.3 limits employer liability to the terms of the SERP Plan.  Section 15.3 states:
>
> An Employer's liability for the payment of benefits shall be defined only by the Plan and the Participation Agreement, as entered into between the CEO and a Participant.

> An Employer shall have no obligation to a Participant under the Plan except as expressly provided in the Plan and his or her Participation Agreement.

(Donesky Aff. Ex. A. Section 15.3.) An amendment or modification under the SERP Plan may only be made "by the action of [the Employer's] board of directors." (Donseky Aff. Ex. A, Section 10.2.)

Under the Metris SERP Plan, "the Company and its designated employees and agents [are] the 'Plan Administrator' at all times prior to the occurrence of a Change in Control." (Donesky Aff., Ex. A, Section 11.2.) In the event of a Change in Control, the Plan provides that "the 'Plan Administrator' shall be an independent third party selected by the Trustee and approved by the individual who, immediately prior to such event, was the Company's Chief Executive Officer or, if not so identified, the Company's highest ranking officer (the 'Ex-CEO')." (Donesky Aff. Ex. A Section 11.2.)

Article 13 of the SERP Plan addresses the claims procedures applicable to the SERP Plan. Section 13.1 states, in part:

> [a]ny Participant . . . may deliver to the Plan Administrator a written claim for a determination with respect to the amounts distributable to such Claimant from the Plan. If such a claim related to the contents of a notice received by the Claimant, the claim must be made within 60 days after such notice was received . . . All other claims must be made within 180 days of the date on which the event that caused the claim to arise occurred.

(Donseky Aff., Ex. A. Section 13.1.)

Under the SERP Plan's claims procedure, the Plan Administrator is required to consider a claim within a reasonable time. The Plan Administrator must notify the claimant in writing as to the specific reasons for denial of the claim, the specific references to the provisions of the Plan on which the denial was based, and an explanation of the claim review procedure. (Donesky Aff. Ex. A Section 13.2.) A Claimant may file a written request with the Plan Administrator for a review of

3

the denial of the claim within 60 days after receiving notice from the Plan Administrator that the claim has been denied.  (Donesky Aff. Ex. A, Section 13.3.)  The SERP Plan specifically states that "[a] Claimant's compliance with the [claims procedures] . . . of this Article 13 is a mandatory prerequisite to a Claimant's right to commence any legal action with respect to any claim for benefits under this Plan." (Donesky Aff. Ex. A, Section 13.5.)

In addition, Section 15.18 of the SERP Plan states, in part,

> if, following a Change in Control, it should appear to any Participant that the Company, the Participant's Employer or any successor corporation has failed to comply with any of its obligations under the Plan or any agreement thereunder . . . then the Company and the Participant's Employer irrevocably authorize such Participant to retain counsel of his or her choice at the expense of the Company and the Participant's Employer . . . to represent such Participant in connection with the initiation or defense of any litigation or other legal action, whether by or against the Company.

(Donesky Aff. Ex. A, Section 15.18.)

**B.    The Change of Control Severance Agreement**

On or about November 21, 2002, Constant signed the Metris Change of Control Severance Agreement (hereinafter "Agreement").  (Compl. ¶ 13; Ex. A.)  The Agreement includes a non-competition covenant.  The Agreement also states that if, in the event of a Change of Control, an executive's employment is terminated for any reason other than for cause or disability, as defined within the Agreement,

> the Company shall immediately pay the Executive . . . a cash amount equal to the sum of the following amounts . . .
>
> c. all amounts previously deferred by or an accrual to the benefit of the Executive under any nonqualified deferred compensation or pension plan, together with any accrued earnings thereon, and not yet paid by the Company; . . .
>
> e. an amount equal to the sum of the value of the unvested portion of the Executive's accounts or accrued benefits under any qualified plan maintained by the Company

4

as of the Termination Date. . . .

(Compl. Ex. A. at §5.1.)  The Agreement further provides that the Agreement "shall be interpreted and construed in accordance with the laws of the State of Minnesota, without regard to its choice of law principles."  (Compl. Ex. A at § 10.9.)

### C.     The Allegations in the Instant Case

In May 2004 Constant alleges that he was told by benefits manager Dale Bjerke (hereinafter "Bjerke") that, in the event of a change of control, he would be entitled to a present value payment of $821,336 pursuant to the SERP Plan.  (Affidavit of V. John Ella (hereinafter "Ella Aff."), Ex. A. ¶ 4.)  Plaintiff alleges that, during that conversation, Bjerke showed Constant written calculations in support of that present value payment.  (See Donesky Aff. Ex. B.)

In his proposed amended counterclaims, Constant alleges that he received an email on March 28, 2005, from the head of the SERP Committee, Dave Olson, that described the SERP Plan's payout terms upon a Change in Control as follows:

> Upon a change in control of the Company, the SERP provides for the funding of participant accounts to the present value of the age 55 benefit, and the vesting of all accounts within the SERP.  If a participant is terminated within 24 months following the change in control event, the benefits are payable in the form of a lump-sum payment within 90 days of termination.

(Ella Aff., Ex. A ¶ 16.)

On December 1, 2005, Plaintiff HSBC Finance Corporation (hereinafter "HSBC") acquired Metris' stock and neither party disputes that this action constituted a "Change in Control" under the Agreement and the SERP Plan.[1]  HSBC notified Constant on November 28, 2005, that his employment would be terminated, and Constant remained on the HSBC payroll through December

---

[1] See Pl.'s Mem. at 6; Def.'s Mem. in Opp. at 4.

31, 2005. (Compl. ¶ 21.) On January 6, 2006, pursuant to the Agreement, HSBC paid Constant $736,338.13 in severance, bonus, outplacement and health and welfare benefits in exchange for, *inter alia*, Constant's agreement not to compete with HSBC under section 9 of the Agreement. (Compl. ¶ 22.) In his Counterclaims Constant alleges that, after the change in control occurred, Plaintiff funded his SERP Plan at approximately less than $600,000.00, not to a present value of $821,336.00 as was indicated to Constant by Bjerke in 2004. (Ella Aff. Ex. A. ¶12.)

Plaintiffs HSBC Finance Corporation and HSBC Card Services Inc., (hereinafter referred to as "HSBC") filed the instant suit against Constant for violation of the non-competition covenant contained in the Agreement. Constant filed counterclaims against HSBC, and thereafter filed proposed amended counterclaims as exhibit A to the Affidavit of V. John Ella filed in conjunction with this motion. In his proposed amended counterclaims Defendant alleges nine counterclaims against HSBC. HSBC now moves to dismiss Constant's counterclaims in their entirety. For the reasons that follow, the Court recommends that Plaintiffs' Motion be granted as to Counts I through VII and denied as to Counts XIII and IX.

## II.   STANDARD OF REVIEW

Plaintiffs move to dismiss Defendant's counterclaims for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). A cause of action should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of her claim that would entitle her to relief. <u>Schaller Tel. Co. v. Golden Sky Sys., Inc.</u>, 298 F.3d 736, 740 (8th Cir. 2002) (citations omitted). In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. See <u>Turner v.</u>

Holbrook, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. In re Navarre Corp. Sec. Litig., 299 F.3d 735, 738 (8th Cir.2002).

Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. Neitzke v. Williams, 490 U.S. 319, 326-327 (1989). To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions. Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir.1998).

### III.   LEGAL ANALYSIS

**A.   Counterclaims I, II, V, and VII Relate To the SERP Plan; Therefore, Those Counterclaims are Preempted by ERISA and Must Be Dismissed.**

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries by regulating the creation and administration of employee benefit plans." Kuhl v. Lincoln National Health Plan of Kansas City, Inc., 999 F.2d 298, 301 (8th Cir.1993) (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1987)). 29 U.S.C. § 1144(a) states Congress' clear intention to preempt "all State laws insofar as they may now or hereafter relate to any employee benefit plan." The Eighth Circuit noted that "[t]he question of whether a certain state law is preempted by ERISA is necessarily a question of legislative intent, and the Supreme Court has left no doubt that Congress intended the preemption clause to be construed extremely broadly." Id. (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990)).

In Ingersoll-Rand Co. v. McClendon, the Supreme Court noted that the key to 29 U.S.C. § 1144(a) "is found in the words 'relate to,'" and that "Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause 'applicable only to state laws relating to the specific subjects covered by ERISA.'" 498 U.S. at 138 (quoting Shaw v.

Delta Airlines, Inc., 463 U.S. 85, 98 (1983)). The Supreme Court further noted that "to underscore its intent that [the pre-emption clause] be expansively applied, Congress used equally broad language in defining the "State law" that would be pre-empted. Such laws include 'all laws, decisions, rules, regulations or other State action having the effect of law.'" Id. at 138-39 (quoting 29 U.S.C. § 1144(c)(1)).

In Shaw v. Delta Airlines, Inc., the Supreme Court stated that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." 463 U.S. at 96-97. "Under this broad, common-sense meaning, a state law may relate to a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." Ingersoll-Rand, 498 U.S. 139 (internal quotations omitted).

Constant agrees that the SERP Plan is governed by ERISA. (See Ella Aff., Ex. A ¶ 2.) Therefore, the only issue before the Court is whether Counterclaims I, II, V, and VII "relate to" the SERP Plan and are therefore pre-empted by ERISA.

In proposed amended Counterclaim I, Constant alleges a counterclaim against HSBC for breach of contract. Constant alleges that the verbal representations made to him regarding the level of funding of his SERP Plan constituted a legally binding contract and that HSBC has breached that contract by underfunding Constant's SERP Plan. Constant also argues that HSBC has breached its contractual duty to make the payments to Constant required by the SERP Plan once a Change of Control occurred. Constant alleges that he is entitled to damages based on HSBC's breach of contract "in an amount in excess of $200,000.00." (Ella Aff. Ex. A ¶ 28.) In the present case, Counterclaim I clearly "relates to" the SERP Plan, as Counterclaim I is directly connected to the

SERP Plan and the relief sought is additional funding of his SERP Plan account. Therefore, Counterclaim I "relates to" the SERP Plan, which is governed by ERISA, and Counterclaim I is pre-empted by ERISA pursuant to 29 U.S.C. §1144(a).

In proposed amended Counterclaim II, Constant alleges a counterclaim for promissory estoppel. Constant alleges that "HSBC's representations to Constant relating to the amount funding of his SERP constituted a clear and definite promise," that HSBC made such a representation with the intent to induce Constant to rely on that promise, and that Constant reasonably relied on that promise in good faith and to his detriment. (Ella Aff. Ex. A ¶¶ 30-32.) Constant alleges that HSBC's promise concerning the level of funding of his SERP Plan must be enforced to prevent injustice, and claims that he is entitled to a judgment "in an amount in excess of $200,000.00." (Ella Aff. Ex. A ¶ 34.) Counterclaim II clearly "relates to" the SERP Plan, as it alleges that HSBC made representations to Constant relating to the amount of funding of his SERP Plan account. Counterclaim II has a connection with the SERP Plan, which is governed by ERISA, and therefore Counterclaim II is pre-empted by 29 U.S.C. § 1144(a).

In proposed amended counterclaim V, Constant alleges a counterclaim for unjust enrichment. Constant alleges that HSBC has not paid him substantial sums of money owed to him under his SERP Plan, that "Metris/HSBC knowingly accepted the benefit of obtaining and retaining Constant's services as employee in exchange for Constant signing the change in control agreement" and that "[u]nder the circumstances, it would be inequitable for HSBC to retain moneys promised to Constant pursuant to the SERP, at the level promised to Constant." (Ella Aff. Ex. A ¶¶ 45-47.) Constant alleges that he is entitled to damages in "an amount in excess of $200,000.00." (Ella Aff. Ex. A ¶ 48.) Counterclaim V "relates to" the SERP Plan, as it alleges that it would be inequitable

9

for HSBC to retain money promised to Constant pursuant to the SERP.  Since Counterclaim V has a connection with the SERP Plan, and the SERP Plan is governed by ERISA, Counterclaim V is pre-empted by 29 U.S.C. § 1144(a).

In proposed amended counterclaim VII, Constant alleges a counterclaim for breach of contract of the severance agreement.  Constant argues that HSBC has breached its contractual requirement to make payments to Constant pursuant to the Severance Agreement upon a change in control.  Constant alleges that he is entitled to damages in excess of $200,000.00, the same relief he requests in conjunction with Counts I, II, and V.  (Ella Aff. Ex. A ¶¶ 52-53.)

Constant argues that Counterclaim VII does not relate to the SERP Plan, as paragraph 10.9 of the Agreement states that it is governed by the laws of the State of Minnesota.  Constant argues that the Agreement

> affirmatively states that HSBC is obligated, upon termination of an executive employee such as Constant for a reason other than cause to pay Constant all amounts previously deferred by or an accrual to the benefit of [Constant] under any nonqualified deferred compensation or pension plan, together with any accrued earnings thereon, and not yet paid by the Company.

(Def.'s Mem. in Opp. at 16) (internal quotations omitted).  Constant argues that "this obligation exists independently of the SERP Plan, although [he] concedes that this arguably 'relates' to an ERISA plan and could be preempted."  (Def.'s Mem. in Opp. at 16.)

Counterclaim VII relates to the SERP plan as it is connected with and references the SERP Plan.  In addition, the relief sought by Constant in Counterclaim VII is the same relief Constant seeks in Counterclaims I, II, and V; that is, for his SERP Plan to be funded at the level promised to Constant by Bjerke, which is in an amount in excess of $200,000.00.  Counterclaim VII relates to the SERP Plan and the SERP Plan is governed by ERISA; therefore Counterclaim VII is pre-empted

10

by ERISA pursuant to 29 U.S.C. § 1144(a).

### B.     Counterclaim III Must Be Dismissed Because It Does Not State An ERISA Claim.

In Counterclaim III, Constant alleges a counterclaim for breach of fiduciary duty.  Constant alleges that Bjerke "at all relevant times was subject to common law and statutory fiduciary duties in regard to representing to Metris/HSBC employees their expected or actual levels of benefits under ERISA and non-ERISA plans."  (Ella Aff. Ex. A ¶ 36.)  Constant alleges that Bjerke acted in a fiduciary capacity on behalf of HSBC when he informed Constant of Constant's level of benefits, and that Bjerke and HSBC breached their fiduciary duties to Constant by misinforming Constant, to his detriment, about the actual level of Constant's benefits under the HSBC SERP Plan.  Constant alleges that Bjerke's actions in describing to Constant the level of benefits to which Constant would be entitled under the SERP Plan occurred in the course and within the scope of Bjerke's employment with Metris/HSBC and that as an agent of HSBC Bjerke had actual or implied authority to bind the company.  Constant seeks damages based on HSBC's "statutory and common law breach of fiduciary duty in an amount to be determined at trial."  (Ella Aff. Ex. A ¶ 40.)

Pursuant to 29 U.S.C. § 1101(a)(1), the fiduciary responsibility provisions of ERISA do not apply to "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."  A "plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees" is commonly referred to as a top hat plan.  The SERP Plan in the present case is a top hat plan, as is evident by reviewing its purpose clause.  The purpose clause of the SERP states that the purpose of the SERP Plan "is to provide specified benefits to a select group of management and

highly compensated Employees who contribute materially to the continued growth, development and future business success of Metris Companies, Inc. . . . This Plan shall be unfunded for tax purposes and for purposes of Title I of ERISA." (Donesky Aff., Ex. A at 1.)  As shown by its purpose clause, the SERP Plan in the present case is a top hat plan, and the fiduciary responsibility provisions of ERISA do not apply to top hat plans.  Counterclaim III fails to state a claim upon which relief may be granted, as it attempts to state a claim for breach of fiduciary duty when the fiduciary responsibility provisions of ERISA do not apply to top hat plans.  Therefore, the Court recommends that Plaintiffs' Motion to Dismiss Defendant's Counterclaims be granted as to Counterclaim III.

    **C.    Counterclaims IV and VI Must Be Dismissed Because Oral Representations Cannot Alter the SERP Plan Documents.**

In Counterclaim IV, Constant alleges a violation of ERISA, 29 U.S.C. § 1132(a)(3).  Constant alleges that the SERP Plan is governed by ERISA, and that "[p]ursuant to 29 U.S.C. § 1132(a)(3) Constant is entitled to equitable relief in the form of an Order requiring Metris/HSBC to fund Constant's SERP at the level promised to Constant in the course of representations made to him by Bjerke, in an amount in excess of $200,000.00." (Ella Aff. Ex. A ¶ 43.)  In Counterclaim VI Constant alleges that he is entitled to a declaratory judgment "that he is owed an amount in excess of $200,000.00 pursuant to the SERP with Metris/HSBC, funded to the level as promised by Bjerke." (Ella Aff. Ex. A ¶ 50.)

Both the claims made in Counterclaim IV and Counterclaim VI rely on the oral representations of Bjerke as support for those claims.  Constant is essentially seeking to modify the written terms of the SERP Plan by using the oral representations of Bjerke.  However, most courts, including the Eighth Circuit, "have held that ERISA precludes oral or informal amendments to a

plan, by estoppel or otherwise." Jensen v. Sipco, Inc., 38 F.3d 945, 953 (8th Cir.1994), cert. denied, 514 U.S. 1050 (1995).  Any oral representations made by Bjerke to Constant cannot alter the SERP Plan, because the written SERP Plan documents themselves control the Plan.  As a result, the written documents of the Plan control and Constant cannot sue to enforce the oral representations made to him by Bjerke.  Therefore, the Court recommends that Plaintiffs' motion to dismiss be granted with respect to Counterclaims IV and VI.

      **D.**     **Plaintiffs' Motion to Dismiss Counterclaims VIII and IX Should Be Denied Because Exhaustion Is Futile In the Instant Case.**

In Counterclaim VIII, Constant alleges that, pursuant to 29 U.S.C. § 1132(a)(1)(B), he is entitled to benefits due under the SERP Plan as a result of the change in control.  Constant further alleges that he is entitled to a declaration pursuant to 29 U.S.C. § 1132(a)(1)(B) that his SERP benefits are immediately payable, and that he is entitled to damages based on HSBC's violation of ERISA in an amount in excess of $200,000.00.  (Ella Aff. Ex. A ¶¶ 55-57.)  In Counterclaim IX, Constant alleges that pursuant to 29 U.S.C. § 1132(a)(1)(B) he is entitled to a recalculation of his benefits under the SERP Plan, and that he is accordingly entitled to an order recalculating his SERP benefits to reflect the benefit level that he is entitled to.  (Ella Aff. Ex. A ¶¶ 59-60.)

HSBC argues that Counterclaims VIII and IX should be dismissed because Constant failed to exhaust his administrative remedies and cannot show that it would have been futile to attempt to exhaust his administrative remedies.  Both of the above counterclaims allege that the SERP Plan states that Constant is entitled to more money under the SERP Plan and that he is entitled to an equitable determination by the Court regarding the alleged miscalculation.  Therefore, both counterclaims state a valid claim upon which relief may be granted under ERISA.

It is undisputed that Constant did not attempt to file a claim pursuant to the claims

procedures outlined in the SERP Plan. However, it is also undisputed that, as of yet, no new Plan Administrator has been named.[2] The Court concludes that it would have been futile for Constant to pursue the claims procedures outlined in Article 13 of the SERP Plan, because those procedures direct Constant to deliver a written claim under the SERP Plan to the Plan Administrator, and the Plan Administrator does not, at present, exist to receive such a claim. Pursuant to Section 11.2, in the event of a Change in Control, the Plan Administrator "shall be an independent third party selected by the Trustee and approved by the individual who, immediately prior to such event, was the Company's Chief Executive Officer or, if not so identified, the Company's highest ranking officer (the 'Ex-CEO')." (Donesky Aff. Ex. A Section 11.2.) Since such an individual has not been appointed by the Trustee and approved by the former Chief Executive Officer of Metris following the Change in Control that occurred in December 2005, a Plan Administrator does not currently exist to receive any claims from any persons pursuant to the claims procedure set out by the SERP Plan. Therefore, any attempt to utilize the claims procedure outlined in the SERP Plan would have been futile, since no Plan Administrator currently exists to accept or receive any such complaints.

The Court has determined that Constant has stated a claim upon which relief may be granted in Counterclaims VIII and IX, and that exhaustion of his administrative remedies would have been futile; therefore, Constant is excused from the exhaustion requirement and the Court recommends that Plaintiffs' motion to dismiss be denied as to Counterclaims VIII and IX.

### IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY**

---

[2] At the hearing on this matter, Plaintiffs' counsel stated that, as of yet, the Trustee has not selected an independent third party to become the Plan Administrator, and that the process of securing a new Plan Administrator was ongoing.

**RECOMMENDED** that Plaintiffs' Motion to dismiss Defendant's counterclaims [#11] be **DENIED** as to Counterclaims VIII and IX. In all other respects the Court recommends that Plaintiffs' Motion to dismiss Defendant's counterclaims [#11] be **GRANTED**.


DATED: September 6, 2006          s/ Franklin L. Noel
                                                    FRANKLIN L. NOEL
                                                    United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **September 26, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **September 26, 2006** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.